**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Ryan Kwitkin,

            Plaintiff,

v.

City of Sedona, et al.,

            Defendants.

No. CV-25-08018-PCT-DJH

**ORDER**

Before the Court is City of Sedona's ("City") and Stephanie Foley's ("Chief Foley") (collectively "Defendants") Motion to Dismiss Plaintiff Ryan Kwitkin's ("Kwitkin") First Amended Complaint ("FAC"). (Doc. 10). Kwitkin filed a Response opposing the Motion and Defendants then filed a Reply. (Docs. 22 & 25). For the reasons stated below, the Court grants Defendants' Motion to Dismiss as to the Section 1983 *Monell* claim against the City and denies it as to the Section 1983 claim against Chief Foley.

**I.      Background**

Kwitkin started his job as Deputy Chief of Police for the City of Sedona on March 20, 2023, under a probationary term. (Doc. 7 at ¶ 20). As sometimes happens in the workplace, Kwitkin made some observations that caused him a certain level of personal distress. (*Id.* at ¶¶ 21–26). While some of his observations can be characterized as personal, he maintains that many of them were about public safety and violations of law. (*Id.* at ¶ 26–29). He especially took issue with police volunteers being allowed to transport prisoners and drive cars marked with the word "Police" on them. (*Id.* at ¶¶ 35–40).

Kwitkin had even more concerns about the way the Police Department ran its operations. He expressed discontent at the ineffective way jail locks were used to keep prisoners contained. (*Id.* at ¶¶ 43–47). He was also unsettled by the way police evidence was kept and thought there were potential chain of custody issues. (*Id.* at ¶¶ 48–52). At every turn, Kwitkin states that he complained to Chief Foley about what he perceived to be violations of public safety and the law. (*Id.* at ¶¶ 56–58). Finding that complaining to Chief Foley was unfruitful, Kwitkin then went outside his chain of command and complained to a "Mr. Martin." (*Id.* at ¶ 65). Although Kwitkin does not explain who Mr. Martin is, he says that other employees also spoke to Mr. Martin to express their concerns about Chief Foley. (*Id.* at ¶¶ 65–68). Eventually, the City Manager was apprised of Kwitkin's allegations and the complaints of others. (*Id.* at ¶ 77). An investigation was conducted into Chief Foley's behavior but with no repercussions, according to Kwitkin. (*Id.* at ¶ 84). Instead, Kwitkin was informed that an investigation was launched into his own personal conduct and that his probationary period was extended. (*Id.* at ¶¶ 99 & 101). Kwitkin says that he was then terminated. (*Id.* at ¶ 107). In his FAC, he alleges constitutional violations for Section 1983 under the First and Fourteenth Amendments against both Defendants.

## II.    Legal Standard

A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (citation omitted). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557. The Court is mindful that it must "construe pro se filings liberally when evaluating them under *Iqbal.*" *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, a district court "consider[s] only allegations contained in the pleadings, exhibits attached to the complaint and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). A court may, however, "consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz*, 476 F.3d at 763 (citations omitted). Under this "incorporation by reference" doctrine, district courts "may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). "The court otherwise may not consider matters outside the complaint[,]" including new allegations in the motion or exhibits attached thereto. *Jacobsen v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)).

## III.   Discussion

Defendants' Motion to Dismiss Plaintiff's Section 1983 *Monell* claim against the City will be granted because Kwitkin has failed to plausibly allege an unlawful practice or policy by the City.  His First Amendment retaliation claim against Chief Foley, however, survives.

**A. Plaintiff's *Monell* claim against City**

Defendants assert that Kwitkin has failed to identify a governmental policy that establishes Section 1983 liability against the City. (Doc. 10 at 4). Kwitkin counters that the City adopted a custom or practice of retaliating against City employees who raised matters of public concern. (Doc. 22 at 4–5). The Court agrees with Defendants that Kwitkin has not sufficiently identified a governmental policy, custom, or practice that can conform to the standards of municipal liability under *Monell*.

*Monell* established that a municipality cannot be held liable under Section 1983 under a *respondent superior* theory. *Monell*, 436 U.S. at 690. Rather, to state a claim against a municipality under Section 1983, a plaintiff must allege the following: "(1) the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom, or practice that amounted to deliberate indifference to the plaintiff's constitutional right; and, (3) that the policy, custom, or practice was the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)); *see also Monell*, 436 U.S. at 691–92. Three types of situations can give rise to a *Monell* claim. First, a municipality may be liable "when implementation of its official policies or established customs inflicts the constitutional injury." *Monell*, 436 U.S. at 708. Second, a city "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.' " *Clouthier v. Cty of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds in Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). Third, a plaintiff can prevail by showing certain acts or omission by a local government, such as a pervasive failure to train municipal employees, but only "when such omissions amount to the local government's own official policy." *Clouthier*, 591 F.3d at 1249. A plaintiff seeking to bring a Section 1983 claim "may not simply recite the elements of a cause of action but

must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

Of course, "[a]n unconstitutional policy need not be formal or written to create municipal liability under Section 1983" but must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). In other words, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Kwitkin argues that the Court can "infer the existence of a City custom or practice of retaliating against employees who speak out about matters of public concern" from the allegations of his FAC. (Doc. 22 at 5). He alleges that "after beginning his employment with the City, he quickly learned that Chief Foley expected nothing but loyalty from those under her employ and did not tolerate 'employees expressing concern of a different opinion.' " (Doc. 7 at ¶¶ 21–22). He says he "observed that employees were fearful to raise concerns for fear of retaliation" and after he reported a series of safety and taxpayer concerns to Chief Foley, other employees "confided in Plaintiff that, if they raised any complaints to or about Chief Foley, they feared losing their jobs or would be denied promotional opportunities." (*Id*. at ¶ 62). Kwitkin then goes on to say that when he spoke out, his probation period was extended, and he was ultimately terminated. (*Id.* at ¶¶ 101–102).

The Court finds that these allegations do not sufficiently identify a City custom or practice of retaliation by Chief Foley that was so permanent, well-settled, and of sufficient duration, frequency, and consistency that it was a policy that was carried out with the force of law. *See Gordon*, 6 F.4th at 974. Kwikin has not pointed to how Chief Foley's responses to complaints—i.e., employees' general fear of retaliation, her extension of Kwitkin's

- 5 -

probation, and his subsequent termination—amounts to anything more than isolated incidents, untethered to an official policy maintained by the City. (Doc. 7 at ¶¶ 34, 43 & 48). Kwitkin's generalized assertions that other employees confided they feared repercussions from complaining to Chief Foley, without more, are insufficient. *Iqbal*, 556 U.S. at 678.

And while there are instances where a single act can trigger *Monell* liability for a municipality, the situation at hand does not fall within those requirements. The single act must be committed by an official with final policy making authority. *Clouthier*, 591 F.3d at 1250. Plaintiff concedes that Chief Foley is not a final policy maker and admits that it is not alleging "that the City violated his constitutional rights through the formal policy or final policymaker *Monell* theories." (Doc. 22 at n.1). Therefore, the Court finds that Kwitkin's *Monell* claim against the City cannot go forward as pled and Defendants' Motion to Dismiss will be granted as to this Section 1983 *Monell* liability.

### B. Chief Foley's Qualified Immunity Defense

Defendants also argue that the FAC should be dismissed because Chief Foley, as an individual, is entitled to qualified immunity. (Doc. 10 at 8). In response, Kwitkin asserts that determining qualified immunity is improper at the motion to dismiss stage and is unwarranted in any event. Kwitkin also says he has sufficiently alleged that his First Amendment rights were violated and that they were clearly established at the time of the violation. (Doc. 22 at 7).[1]

"In [Section] 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818

---

[1] Defendants point out that the FAC "vaguely references an alleged Due Process violation but contains no facts to support the claim or any other information that would put Defendants on notice as to what that claim is about." (Doc. 10 n.5). Plaintiff does not respond. The Court agrees that any Due Process claim is insufficiently pled and as such is dismissed.

(1982). When a defendant asserts qualified immunity in a Rule 12(b)(6) motion to dismiss, the court must accept the allegations in the complaint as true, and "dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

To determine whether a government official is entitled to qualified immunity, courts must consider: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson*, 555 U.S. at 230–32, 235–36. Courts have discretion in deciding which of these two prongs to address first depending on the circumstances in the particular case at hand. *Id.* Generally, the first step is to "defin[e] the law at issue in a concrete, particularized manner" as determined—in the case of a motion to dismiss—by the allegations in the complaint. *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White v. Pauly*, 580 U.S. 73, 79–80 (2017)).

An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and Cty. of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 611 (2015) (omission in original) (internal quotations and citation omitted). This is an "exacting standard" that "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted). Although it is not necessary that a prior decision rule "the very action in question" be unlawful for a right to be clearly established, *Anderson v. Creighton*, 483 U.S. 635, 640, (1987), the Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality, *White*, 580 U.S. at 79–80 (per curiam). *See also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find case law with identical facts, but the further afield existing precedent lies the more likely that

official's acts fall within vast zone of conduct that is constitutional).

Once the right at issue is defined, courts must then "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated" that right. *Shafer*, 868 F.3d at 1117 (citing *White*, 580 U.S. at 79). If there is no such case, then the right was not clearly established. *Id.* at 1117–18. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).

Kwitkin alleges that his probation was extended and he was ultimately fired in violation of his First Amendment rights because he spoke out on matter of public concern. (Doc. 7 at ¶ 30).  Defendants do not dispute that the constitutional right at issue is the First Amendment.  But Defendants argue that because Kwitkin spoke out on matters of public concern in his capacity as a public employee, he had no clearly established First Amendment right at time of the alleged retaliation.  (Doc. 10 at 8–9).

Under the *Pickering* balancing test, whether a person has a clearly established First Amendment right at the time of the violation requires a court to assess the following:

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee;
> (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
> (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and
> (5) whether the state would have taken the adverse employment action even absent the protected speech.

*See Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 573 (1968). In his Response, Kwitkin points out that an assessment of whether he had a clearly established First Amendment right when his probation was extended and later when he was terminated requires the Court to consider allegations that are still in need of factual development.  The Court agrees.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1072 (9th Cir. 2013) ("[T] the court must reserve judgment on [whether the plaintiff's speech was pursuant to his official duties] . . . until after the fact-finding process."); *see also Robinson*

- 8 -

*v. York,* 566 F.3d 817, 823–24 (9th Cir. 2009) (holding that the "scope of [the plaintiff's] job duties is a question of fact"). The Court therefore declines to conclude on a motion to dismiss that Chief Foley is entitled to qualified immunity; Kwitkin has sufficiently alleged that his First Amendment rights were violated. Therefore, the Court will not grant Defendants' Motion to Dismiss against Chief Foley.

## IV.    Leave to Amend

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on [the] part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture C*o., 806 F.2d 1393, 1401 (9th Cir. 1986). In sum, leave to amend "is properly denied [where] amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Because the Court cannot say that any amendment would be futile, dismissal of Kwitkin's Section 1983 claim against the City is without prejudice, and he may seek leave to amend.

Accordingly,

**IT IS ORDERED** that the City of Sedona's and Chief Foley's Motion to Dismiss (Doc. 10) is **granted in part and denied in part.** Kwitkin's Section 1983 claim against the City of Sedona is dismissed. Any Section 1983 Due Process claim in the FAC is insufficiently pled and shall also be dismissed. Kwitkin may proceed with its Section 1983 First Amendment retaliation claim against Chief Foley.

**IT IS FURTHER ORDERED** that in compliance with the Court's May 30, 2025, Order, the parties shall file an Amended Joint Case Management Report within five (5) days.

Dated this 5th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge